(No. 36133.—

THE PEOPLE *ex rel.* CLYDE R. GARWOOD, County Collector, *et al.,* Appellees, *vs.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed February 15, 1961.*

MARVIN A. JERSILD, of Chicago, and WARD E. DIL-
LAVOU, of Paris, for appellant.

WAYNE S. JONES, State's Attorney, and MASSEY,
ANDERSON & GIBSON, both of Paris, (ROBERT L. GIBSON,
of counsel,) for appellees.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of
the court:

The objection of the New York Central Railroad Com-
pany to the 1957 educational tax rate of Paris Union School
District No. 95 was overruled by the county court of Edgar
County. The objector appeals, contending that sections
17—2 and 17—2.1 of the School Code, (Ill. Rev. Stat.
1957, chap. 122, pars. 17—2, 17—2.1,) as amended in 1957,
are invalid.

Section 17—2 deals with the maximum tax rates which
school districts may levy without a referendum. The 1957
amendment to that section increased those rates. Before
the amendment, this school district was authorized to levy
a rate of .91% for educational purposes. The amendment
authorized it to levy a maximum rate of 1.25%, and the
actual 1957 rate was 1.0503%.

The bill which amended section 17—2 also added a new section, 17—2.1, to the School Code. The new section provides that "Whenever any school district first levies a tax at a rate" within the authorized maximum limits "but in excess of the maximum permissible on the effective date of this amendatory Act any taxpayer in such district may, within 10 days after such levy is made, file with the secretary of the board of education a petition signed by not less than 10% or 1500, whichever is lesser, of the voters of the district requesting the submission to a referendum of the following proposition: 'Shall school district No. —— be authorized to levy a tax for (state purposes) in excess of —— but not to exceed—— as authorized in Section 17—2 of the School Code?'" If a majority of the voters voting on the proposition vote in favor of the increased rate, it becomes effective; if the majority is negative, the previous rate remains in effect.

The objector first contends that the new section, which authorizes what it refers to as a "back door referendum," is invalid because it fails to provide adequate notice to taxpayers of the time within which they must act if they wish to take steps to bring about a referendum. It next argues that since the board of education makes its levy in terms of dollars, and the assessed valuation is not known when the levy is made, the taxpayer can not know what tax rate will be required to produce the amount levied, and so "has no knowledge as to whether or not a petition for a referendum is required."

These arguments are then combined into the following attack upon the validity of both sections 17—2 and 17—2.1: "It was the will of the Legislature to provide an opportunity for the taxpayer to call for a referendum and that the provision to put this will into effect is invalid because it did not go far enough. The Legislature intended to authorize a maximum rate of 1.25% for educational purposes provided the taxpayer had a workable chance to obtain

the opinion of the people of the district by referendum. Because the people had no opportunity because of lack of notice and because of the lack of any opportunity to determine whether or not the levy would require a rate in excess of .91% within the period provided by Section 17—2.1, Sections 17—2 and 17—2.1 are both invalid."

In our opinion the county court correctly overruled the objection. It is true that section 17—2.1 does not itself require that notice of the adoption of the levy be published, and that no other statutory provision fixes the exact date upon which the levy is to be made. But we think that other statutory provisions fix the interval of time within which the board of education must act with sufficient certainty for the legislative purpose. The levy must obviously have been made by the last Tuesday in September, when it is required to be certified to the county clerk. (Ill. Rev. Stat. 1959, chap. 122, par. 17—9.) If it is made before the start of the fiscal year, that is, before July 1 in this case, it must follow the adoption of the budget, and public notice and a hearing on the proposed budget are required. (Ill. Rev. Stat. 1957, chap. 122, par 17—1; *People ex rel. Stanfield* v. *Pennsylvania Railroad Co.* 3 Ill.2d 524.) If it is made after the start of the fiscal year, it must be made after July 1 and before the last Tuesday in September. A taxpayer is thus alerted to the impending tax levy either by notice of the adoption of the budget or by the arrival of the first day of the fiscal year.

There is still left a lengthy period within the bounds of which a board of education may act, and it would certainly be possible to afford more precise notice of the adoption of the levy. The question, however, is not whether more precise notice is possible, but whether the due process clause of the constitution requires it. We are clear that it does not. It was within the power of the General Assembly to authorize school districts to levy increased rates without any referendum whatsoever. So far as the taxpayer is con-

cerned the provision for a referendum is a matter of grace and not of right. For that reason the cases relied upon by the objector, which dealt with situations in which notice was required as a matter of right, are not in point. The proceedings of a board of education are not furtive. They are matters of public record, and for the legislature to require the exercise of a high degree of interest and diligence as a condition for the holding of a referendum at public expense violates no constitutional right. The wisdom of the requirement is not a matter for this court to determine.

Similar considerations apply to the contention that the provision for a referendum is invalid because a taxpayer must act with reference to a referendum before the assessment procedure is completed. In this respect, however, the taxpayer is in no different position than is the board of education, for it, too, must act with respect to its tax levy before the assessment procedures are completed. Under the statutory machinery for assessment and levy, a referendum of the kind here involved could not practicably be deferred until the assessment was completed. The legislature could have taken into account, in providing for the referendum, that major shifts in the assessed value of the property in a school district are the exception, and not the rule, and that the valuation ultimately determined can ordinarily be predicted with substantial accuracy. The taxpayer was free to file his petition within the 10-day period if a fair estimate of the new tax rate revealed that it would exceed the former maximum limit.

The judgment of the county court of Edgar County is affirmed.

*Judgment affirmed.*